**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. CR 26-348-MLG** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ASA SHAW,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

**COMES NOW**, Defendant Asa Shaw, by and through his counsel of record, Assistant Federal Public Defender, Melissa Ayn Morris, and respectfully submits these Objections to the Presentence Report filed on March 27, 2026. (Doc. 10). Mr. Shaw respectfully requests that this Honorable Court sustain the objections and adopt a corrected guideline range, which is consistent with the evidence and Tenth Circuit law.

Mr. Shaw is currently before this Honorable Court for sentencing after pleading guilty to a three-count Information charging Trafficking in Firearms, in violation of 18 U.S.C. §§ 933(a)(1) and (b), Unlawful Possession of a Machinegun in violation of 18 U.S.C. § 922(o) and 924(a)(2), and Possession of a Firearm Not Registered with the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. (Doc. 4).

**I. Objection to the Three-Level Increase for Non-Serialized Firearms Under § 2K2.1(b)(4)(B)**

Mr. Shaw objects to paragraphs 30 and 38 of the PSR which applies a three-level increase. According to U.S.S.G. § 2K2.1(b)(4)(B), if (i) any firearm had a serial number that was modified such that the original information is rendered illegible or unrecognizable to the unaided eye; or (ii) the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number (other than a firearm manufactured prior to the effective date of the Gun Control Act of 1968) or was willfully blind to or consciously avoided knowledge of such fact, increase by 4 levels. U.S.S.G. § 2K2.1(b)(4)(B). Application Note 8 further clarifies that subsection (b)(4)(B)(i) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had a serial number that was modified such that the original information is rendered illegible or unrecognizable to the unaided eye. However, subsection (b)(4)(B)(ii) only applies if the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number (other than a firearm manufactured prior to the effective date of the Gun Control Act of 1968) or was willfully blind to or consciously avoided knowledge of such fact. *See* U.S.S.G. § 2K2.1(b)(4) cmt. App. N.8. The PSR fails to identify which firearms lacked serial numbers. According to U.S. Probation, during the execution of the search warrant at Mr. Shaw's house, firearms not marked with a required serial number were discovered. PSR ¶ 28. However, the report does not provide further detail. For instance, it does not distinguish between legally manufactured unserialized firearms (e.g. privately made firearms) and firearms unlawfully altered. Moreover, the PSR does not include any evidence regarding Mr.

Shaw's knowledge of the missing serial numbers. Without specific firearm-by-firearm findings tied to counts of conviction, this enhancement is unwarranted.

## II. Objection to the Six-Level Increase for 25-99 Firearms Pursuant to § 2K2.1(b)(1)(C)

U.S. Probation asserts that the offense involved 25 to 99 firearms. PSR ¶ 37. According to Application Note 5, for purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer. See U.S.S.G. § 2K2.1(b)(1)(C) cmt. App. N. 1. The PSR references 11 recovered firearms, 77 firearms purchased from Bulldog Firearms, 10 from Albuquerque Guns, and 6 from three different dealers. The total appears to be 93 firearms, but the PSR does not clearly explain which specific firearms are counted toward the enhancement or whether all purchases constitute trafficking. The PSR seems to aggregate all firearms ever purchased by Mr. Shaw over multiple years, including firearms lawfully acquired, lawfully possessed, and lawfully sold without evidence they were part of trafficking or criminal conduct. The government has not identified 25 or more firearms tied to relevant conduct under § 1B1.3. A "purchase history" is not equivalent to trafficked firearms.

Instead, the Court should limit the enhancement to firearms actually proven to be connected to the offense conduct charged — not all firearms in his multi-year purchase history. In this case, a four-level increase should be applied reflecting the offense involved 8-24 firearms, namely the 11 firearms recovered in connection with criminal

activity, where Mr. Shaw was the original purchaser. PSR ¶¶¶ 10-12. The PSR does not establish that all purchased firearms were trafficked rather than retained for personal use or lawfully sold.

**III. Objection to Five-Level Increase for Foreseeable Unlawful Use**

The PSR recommends a five-level increase pursuant to § 2K2.1(b)(5)(C), alleging that Mr. Shaw transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms having reason to believe that such conduct would result in the receipt of the firearms by individuals who intended to use or dispose of them unlawfully. PSR ¶ 39. U.S.S.G § 2K2.1(b)(5)(C) states that a five-level increase to an individual's offense level is to be applied when the defendant: (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who (I) had a prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence; (II) was under a criminal justice sentence at the time of the offense; or (III) intended to use or dispose of the firearms unlawfully; (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received two or more firearms as a result of inducing the conduct described in clause (i). *See* U.S.S.G. § 2K2.1(b)(5)(C).

The PSR bases this enhancement on text messages allegedly informing the defendant that firearms would go to "cartel dudes" in Mexico. However, the PSR does

not quote these text messages directly or provide context. The undercover agent's statements seem to constitute government inducement rather than evidence of Mr. Shaw's pre-existing intent or knowledge. Here the undercover agent's vague reference to cartel dudes does not establish that Mr. Shaw had reason to believe the firearms would be used unlawfully, particularly when there is no evidence of direct involvement with criminal organizations.

The enhancement appears based primarily on the two undercover purchases (the "Custom AK" for $1,700 and the second AK-style rifle for $2,000). Applying this enhancement to all firearms may exceed the factual basis if only specific transactions involved knowledge of unlawful use.

In this case, it appears that the undercover agent initiated contact, made specific requests for firearms with particular characteristics, and allegedly informed the defendant of cartel connections. This raises questions about whether Mr. Shaw independently had reason to believe firearms would be used unlawfully or whether this belief was created by law enforcement.

This enhancement relies heavily on undercover conversations, which Mr. Shaw disputes, and on recoveries in unrelated investigations involving third parties for which no evidence shows Mr. Shaw knew of unlawful intent. Recovery of firearms in criminal contexts does not establish Mr. Shaw's state of mind at the time of the sale. Absent specific, reliable evidence that Mr. Shaw knew purchasers intended unlawful use, this enhancement is misapplied.

## IV. Objection to Four-Level Exportation Intent Increase

The PSR recommends a four-level increase pursuant to § 2K2.1(b)(6)(A), alleging that Mr. Shaw possessed or transferred firearms with knowledge, intent, or reason to believe that they would be transported out of the United States. PSR ¶ 40. U.S.S.G. § 2k2.1(b)(6)(a) states that if the defendant possessed any firearm or ammunition while leaving or attempting to leave the United States, or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States, the offense level should be increased by four-levels. U.S.S.G. § 2K2.1(b)(6)(A).

This enhancement appears to rely on alleged text messages about cartel dudes which occurred during undercover purchases. However, there is no evidentiary support demonstrating Mr. Shaw's knowledge or intent regarding exportation. Instead, the enhancement is based on speculative or generalized assumptions, rather than evidence linking Mr. Shaw's conduct to the criteria outlined in § 2K2.1(b)(6)(A). Moreover, only three firearms were actually recovered outside New Mexico, and none were recovered in Mexico. If the export enhancement is based on statements made by the undercover agent during two transactions, this is insufficient to support a four-level enhancement applicable to the entire offense conduct.

WHEREFORE, Mr. Shaw respectfully requests this Court grant his objections and find Mr. Shaw's correct offense level is 21 and that his correct guideline range is 37-46 months.

Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas Blvd. NW, Suite 501
Albuquerque, NM 87102
O: (505) 346-2489 | F: (505) 346-2494
Melissa_Morris@fd.org

***Electronically filed September 21, 2026***
/s/ Melissa Ayn Morris
Assistant Federal Public Defender
Attorney for Mr. Shaw